[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Yost v. Columbus City Schools Bd. of Edn.*, Slip Opinion No. 2026-Ohio-1878.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2026-OHIO-1878

THE STATE EX REL. YOST, ATTY. GEN., *v.* COLUMBUS CITY SCHOOLS BOARD OF EDUCATION.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Yost v. Columbus City Schools Bd. of Edn.*, Slip Opinion No. 2026-Ohio-1878.]

*Mandamus—Standing—Parens patriae doctrine—Parens patriae standing allows for the State to sue for indirect injury, which is inconsistent with the requirement that relators in mandamus cases be directly benefited or injured by a judgment in the case—Attorney general would not directly benefit from a writ of mandamus in a case affecting a small number of pupils within one school district and therefore cannot show that the case concerns well-being of a substantial segment of the State's population—Parens patriae standing cannot apply in a mandamus case and attorney general lacks standing—Cause dismissed.*

(No. 2024-1250—Submitted June 24, 2025—Decided May 26, 2026.)

IN MANDAMUS.

_____

The per curiam opinion below was joined by FISCHER, DEWINE, BRUNNER, and SHANAHAN, JJ. DETERS, J., concurred, with an opinion joined by FISCHER and DEWINE, JJ. KENNEDY, C.J., concurred in part and dissented in part, with an opinion joined by HAWKINS, J.

**Per Curiam.**

{¶ 1} The summer before the 2024–2025 school year, respondent Columbus City Schools Board of Education ("the school board") passed a resolution declaring under R.C. 3327.02 the impracticality of its providing transportation for certain pupils living within the district who attended private or charter schools. Relator, Attorney General Dave Yost, filed this original action, seeking a writ of mandamus ordering the school board to comply with its statutory obligations to provide transportation for pupils attending private or charter schools until challenges to the school board's impracticality determination are resolved.

{¶ 2} Among other defenses, the school board challenges the attorney general's standing to bring this action. For his part, the attorney general relies solely on the parens patriae doctrine to establish his standing to sue in mandamus. The parties have also filed motions for leave to file rebuttal evidence, and the school board has filed objections to certain evidence as inadmissible hearsay or lay opinion.

{¶ 3} We grant the attorney general's motion for leave to file rebuttal evidence, deny the school board's motion to file a rebuttal affidavit, overrule the school board's evidentiary objections, and dismiss this action for lack of standing.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. School Transportation for Charter- and Private-School Pupils

{¶ 4} Under R.C. 3327.01, an Ohio public-school district "shall provide transportation" to and from school for pupils who live more than two miles from

2

the school they attend. This obligation generally extends to pupils of private and charter schools.[1] *Id.* A school district is not, however, required to transport pupils to and from a private or charter school under the following circumstances:

> A board of education shall not be required to transport elementary or high school pupils to and from a nonpublic or community school where such transportation would require more than thirty minutes of direct travel time as measured by school bus from the public school building to which the pupils would be assigned if attending the public school designated by the district of residence.
>
> Where it is impractical to transport a pupil by school conveyance, a board of education may offer payment, in lieu of providing such transportation in accordance with section 3327.02 of the Revised Code.

R.C. 3327.01.

{¶ 5} Before a school district may offer payment to parents in lieu of transporting their children to school because of impracticality, the school district must consider six factors:

> (1) The time and distance required to provide the transportation;
>
> (2) The number of pupils to be transported;

---

1. R.C. 3327.01 uses the terms "nonpublic school" and "community school," whereas the attorney general uses the terms "private school" and "charter school." We use the attorney general's terminology.

(3) The cost of providing transportation in terms of equipment, maintenance, personnel, and administration;

(4) Whether similar or equivalent service is provided to other pupils eligible for transportation;

(5) Whether and to what extent the additional service unavoidably disrupts current transportation schedules; [and]

(6) Whether other reimbursable types of transportation are available.

R.C. 3327.02(A)(1) through (6). After considering these six factors, a school district "may pass a resolution declaring the impracticality of transportation" no later than thirty days before the district's or school's first day of instruction. R.C. 3327.02(B). In addition, the school district must issue a letter to the affected pupil's parent or guardian, the private or charter school in which the pupil is enrolled, and the Department of Education and Workforce ("DEW") detailing the reasons for the district's impracticality determination. *Id.*

{¶ 6} After passing the resolution of impracticality, the school district "shall offer to provide payment in lieu of transportation." R.C. 3327.02(C). The offer must inform the pupil's parent or guardian of the right to accept the offer or reject the offer and to instead request mediation. R.C. 3327.02(C)(1)(b). If the parent or guardian rejects payment and requests mediation, DEW shall conduct the mediation; if mediation does not resolve the dispute, DEW must then conduct an administrative hearing under R.C. Ch. 119, after which DEW may approve the payment in lieu of transportation or order the school district to provide transportation. R.C. 3327.02(E)(1)(a) and (b). The DEW's decision in the administrative hearing "is binding in subsequent years and on future parties in interest provided the facts of the determination remain comparable." R.C. 3327.02(E)(1)(b).

4

{¶ 7} Meanwhile, during the mediation and subsequent appeal process, the school district "*shall* provide transportation for the pupil" from the time mediation is requested until the matter is resolved in mediation or the administrative hearing. (Emphasis added.) R.C. 3327.02(E)(2). The statute also imposes consequences on a school district that does not provide transportation as mandated by R.C. 3327.02(E)(2). If a school district "has failed or is failing to provide transportation" pending the outcome of mediation or the administrative hearing, "the department shall order the school district . . . to pay to the pupil's parent, guardian, or other person in charge of the pupil, an amount equal to fifty per cent of the cost of providing transportation as determined by the board or governing authority," not to exceed $2,500. R.C. 3327.02(F)(1). If a school district fails to comply with an order to pay the amount determined under R.C. 3327.02(F)(1), DEW "shall deduct the amount that the board is required to pay under that order from any pupil transportation payments the department makes to the school district board." R.C. 3327.02(F)(2). In turn, DEW uses the money withheld from the school district to pay the private and charter schools attended by the affected pupils. *Id.*

B. *Alleged Failure to Comply with R.C. 3327.02*

{¶ 8} In response to a bus-driver shortage, the school board in February 2024 began to evaluate the impracticality of providing transportation for certain pupils during the 2024–2025 school year. The school board held public meetings in March 2024, at which it conveyed its intent to declare transportation impractical under R.C. 3327.02 for some pupils before the start of the 2024–2025 school year.

{¶ 9} In April 2024, the school board determined which charter- and private-school pupils in the district were ineligible for transportation because they live more than 30 minutes away from their home school. The school board then reviewed the routing of all other charter- and private-school pupils to evaluate the practicality of transporting them. By June 2024, the school board determined that transporting an unspecified number of pupils enrolled in charter and private schools

was impractical.  According to the school board, it notified families affected by the impracticality determinations and offered payment in lieu of transportation.

{¶ 10} The 2024–2025 academic year for Columbus city schools began on August 21, 2024.  Thus, according to the attorney general, the latest day on which the school board could make an impracticality determination under R.C. 3327.02 was July 22, 2024.  Despite the statutory deadline, the board made impracticality determinations affecting 1,380 pupils on or after August 6, 2024.  The attorney general alleges that many affected families did not receive notices of the school district's determination until the week of August 12, 2024.  For its part, the school board states that it made impracticality determinations after June 2024 because of belated transportation requests and related information from charter schools, private schools, and families of pupils.  The total number of pupils who have been the subject of impracticality determinations was 2,644 as of December 6, 2024.

{¶ 11} Of the pupils affected by its impracticality determinations, the school board avers that 674 families accepted payment in lieu of transportation and 175 requested mediation.  Of the 175 families who requested mediation, the school board states that it provided interim transportation to 102 of them.  Based on these figures, the attorney general contends that a number of families remain who requested mediation but are not receiving interim transportation as required by R.C. 3327.02(E)(2).

### C.  The Attorney General Sues in Mandamus

{¶ 12} The attorney general commenced this action on September 5, 2024.  His complaint seeks a writ of mandamus requiring the school board "to comply immediately with its obligations under Chapter 3327 of the Ohio Revised Code." Specifically, he seeks a writ compelling the school board to provide transportation to and from private or charter schools to each pupil on whose behalf mediation has been or will be requested as a result of an impracticality resolution, continuing until the matter is resolved under R.C. 3327.02(E)(1)(a) or (b).  The attorney general also

6

filed an "emergency motion for writ of mandamus," asking the court to issue a "temporary emergency writ" pending a final resolution of his claims.[2]  The school board filed a motion to dismiss the attorney general's complaint.

{¶ 13} We denied the attorney general's emergency motion.  2024-Ohio-4865.  We also denied the school board's motion to dismiss and granted an alternative writ.  2024-Ohio-5522.[3]  In addition to their evidence and merit briefing, the parties have filed two motions that remain pending.  The attorney general filed a motion for leave to file rebuttal evidence.  The school board did not file a response to the attorney general's motion and instead filed a motion for leave to submit a rebuttal affidavit in response to the attorney general's rebuttal evidence.  The attorney general opposed the school board's motion.

{¶ 14} In addition, the school board has filed objections to certain evidence filed by the attorney general, to which the attorney general responded.

## II.  ANALYSIS

### A.  Motions for Leave to File Rebuttal Evidence

{¶ 15} The attorney general has moved for leave to file rebuttal evidence under S.Ct.Prac.R. 12.06(B).  Rebuttal evidence "is that given to explain, refute, or disprove new facts introduced into evidence by the adverse party; it becomes relevant only to challenge the evidence offered by the opponent, and its scope is limited by such evidence."  *State v. McNeill*, 1998-Ohio-293, ¶ 44.

{¶ 16} The attorney general seeks leave to file the affidavits of Jennifer Pratt, John Dues, and Sarah Silver to rebut the school board's arguments that this

---

2. The attorney general also sought a writ of mandamus compelling the school board to send by email within two calendar days to each private or charter school (1) a list of pupils for whom transportation to that school has been deemed impractical and (2) a notification that any pupil on the list, or the school on a pupil's behalf, may request mediation up to ten days after the date of the email.  We dismissed this claim for relief.  2024-Ohio-5522.

3. While this case was pending, the attorney general filed a similar motion in August 2025, along with a motion to file revised evidence.  We denied the motions.  2025-Ohio-3060.

matter is moot and that the attorney general lacks standing. We have reviewed the affidavits and have determined that they challenge the school board's contentions with regard to mootness and parens patriae standing. We therefore grant the attorney general's motion for leave to file rebuttal evidence.

{¶ 17} We deny the school board's motion for leave to submit a rebuttal affidavit. The school board seeks leave to file an additional affidavit of Rodney Stufflebean, the school district's executive director of the transportation department. The affidavit purports to rebut the testimony in the attorney general's rebuttal evidence. However, our rules permit only *the relator* to file rebuttal evidence. *See* S.Ct.Prac.R. 12.06(B); *see also State ex rel. Ware v. Sheldon*, 2025-Ohio-1768, ¶ 9.

### B. Objections to Evidence

{¶ 18} The school board objects to alleged hearsay statements in exhibits A through C attached to the attorney general's complaint,[4] as well as to alleged hearsay and inadmissible opinion contained throughout volumes I and II of the attorney general's evidence submission. Regarding the latter, the school board takes primary issue with news articles, internet postings, and references to YouTube recordings. The school board objects to "any" statements contained within hundreds of pages of evidence that "are out-of-court written statements" containing hearsay. The school board also objects to hearsay statements and speculation contained in the affidavits of Stephanie Hamburger and Silver. In addition, the school board objects to inadmissible opinion statements in the affidavits of Andrew Boy, Sarah O'Bryan, and William McKinney.

{¶ 19} We overrule the school board's objections without addressing the admissibility questions. *See State ex rel. Ungaro v. Mahoning Cty. Bd. of Elections*,

---

4. In his evidence submission filed in accordance with this court's alternative-writ schedule, the attorney general states that he is relying on documents previously filed in the action and affidavits. This would include the affidavits and exhibits attached to the complaint.

2022-Ohio-3318, ¶ 17 (lead opinion).  This court is capable of disregarding statements that are not properly admissible or irrelevant without formally striking evidence.  *See State ex rel. Tam O'Shanter Co. v. Stark Cty. Bd. of Elections*, 2017-Ohio-8167, ¶ 11.  Moreover, the evidence to which the school board objects is immaterial to the two legal issues on which this case turns: whether the attorney general has standing to bring this action and, if so, whether R.C. 3327.02(E)(2) is enforceable in mandamus.

### C.  Mootness

{¶ 20} The school board argues that this case is moot because there is no longer a justiciable dispute.  Alluding to the affidavit sworn by Stufflebean, the school board states that it offered or provided transportation to the students at issue.

{¶ 21} Performance of the act requested in a mandamus action generally renders the action moot.  *State ex rel. Law Office of Montgomery Cty. Pub. Defender v. Rosencrans*, 2006-Ohio-5793, ¶ 15.  The school board has not, however, established that it has performed the act requested in the attorney general's complaint, i.e., providing interim transportation to every pupil affected by an impracticality determination whose family has requested mediation.  Stufflebean's affidavit does not say that transportation has been provided to *all* affected pupils; indeed, the record suggests that as of December 2024, numerous pupils were not receiving the transportation required by statute.  Accordingly, the school board has not shown that this matter is moot.

### D.  The Attorney General's Standing to Sue

{¶ 22} As one of its defenses, the school board raised the attorney general's lack of standing to sue in this case.  "A party must establish standing to sue before a court can consider the merits of the claim."  *State ex rel. Ohio Stands Up!, Inc. v. DeWine*, 2021-Ohio-4382, ¶ 5.

{¶ 23} To have standing to sue in mandamus, a relator must be "beneficially interested" in the case.  *Id.* at ¶ 7; *see also* R.C. 2731.02 (a writ of mandamus "may

issue on the information of the party beneficially interested"). "[T]he applicable test is whether [the relator] would be directly benefited or injured by a judgment in the case." *State ex rel. Sinay v. Sodders*, 1997-Ohio-344, ¶ 9.

{¶ 24} The grant or denial of a writ of mandamus ordering the school board to provide interim transportation would directly benefit identifiable persons and entities other than the attorney general—i.e., the pupils, their families, and perhaps the private and charter schools that have pupils affected by the school board's impracticality determinations. The attorney general does not, however, explain how he or his office would *directly* benefit from the issuance of a writ of mandamus in this case. Nor does the attorney general cite a statute that authorizes him to act on behalf of those who would directly benefit from a writ of mandamus. When a relator has shown neither statutory standing nor a direct beneficial interest in the outcome of a mandamus action, we have dismissed for lack of standing. *See State ex rel. Hills & Dales v. Plain Local School Dist. Bd. of Edn.*, 2019-Ohio-5160, ¶ 10-13; *see also Ohio Stands Up!* at ¶ 5 ("An action brought by a party that lacks standing will be dismissed.").

{¶ 25} The attorney general invokes the parens patriae doctrine as the basis for his standing to bring this mandamus suit. "Parens patriae means, literally, 'parent of his or her country,' and refers to the role of the state as sovereign and guardian of persons under legal disability." *Kelm v. Kelm*, 2001-Ohio-168, ¶ 6, fn. 1, quoting Black's Law Dictionary (7th Ed. 1999). For example, Ohio law recognizes that under the doctrine of parens patriae, "courts are entrusted to protect the best interests of children." *Id.* at ¶ 6.

{¶ 26} "This common-law approach, however, has relatively little to do with the concept of *parens patriae* standing." *Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel. Barez*, 458 U.S. 592, 600 (1982). As a standing doctrine, parens patriae refers to the State's standing to "assert an injury to what has been characterized as a 'quasi-sovereign' interest, which is a judicial construct that does not lend itself to

a simple or exact definition." *Id.* at 601. What is clear, however, is that parens patriae standing "does not involve the States stepping in to represent the interests of particular citizens who, for whatever reason, cannot represent themselves." *Id.* at 600. To the contrary, if "nothing more than this is involved—*i.e.*, if the State is only a nominal party without a real interest of its own," then parens patriae standing is lacking. *Id.*

{¶ 27} The attorney general has cited no case in which any Ohio state court has applied the doctrine of parens patriae standing to allow the State to bring an extraordinary action in mandamus. This is not surprising. Our test for standing in mandamus cases requires that the relator be *directly* benefitted (or injured) by a judgment in the case. *Hills & Dales*, 2019-Ohio-5160, at ¶ 9. But in parens patriae standing, the State is not the party directly benefitted by the outcome of the suit. Indeed, parens patriae standing presupposes that there is injury to an identifiable group of citizens—i.e., those directly benefitted by the outcome of the suit—and that "the *indirect effects* of the injury" at issue are considered "in determining whether the State has alleged injury to a sufficiently substantial segment of its population." (Emphasis added.) *Alfred L. Snapp* at 607. Thus, the parens patriae doctrine of standing allows the State to sue for indirect injury—which is inconsistent with our mandamus jurisprudence.

{¶ 28} Even if we were to indulge the possibility that parens patriae standing could apply in a mandamus case, this is not that case. The attorney general seeks a writ of mandamus ordering the school board to provide interim transportation for private- and charter-school pupils who have challenged the school board's determination that it is impractical to provide them transportation to and from school. To establish that the State has a quasi-sovereign interest separate from the interests of particular persons, thereby granting him parens patriae standing, the attorney general argues that he has interests in (1) ensuring that Ohio's citizens "are not economically disadvantaged" and (2) addressing the school

board's actions that are "threatening the financial viability of private and charter schools in Ohio." Regarding the former, the attorney general cites evidence from parents who have been disadvantaged financially by the school board's refusal to provide transportation. And regarding the latter, the attorney general has submitted evidence that the survival of certain charter and private schools has been placed in jeopardy because the school board refuses to provide interim transportation. The loss of interim transportation caused some schools to lose pupils during the 2024–2025 school year, resulting in revenue losses to those schools.

{¶ 29} For an interest to be quasi-sovereign for purposes of parens patriae standing, however, an interest must concern the well-being of a "sufficiently substantial segment" of a state's population. *Alfred L. Snapp*, 458 U.S. at 607. The parens patriae doctrine does not permit a state to file suit "as a nominal party in order to forward the claims of individual citizens," but, rather, allows it to "act as the representative of its citizens in original actions where the injury alleged *affects the general population . . . in a substantial way*." (Emphasis added.) *Maryland v. Louisiana*, 451 U.S. 725, 737 (1981). Here is where the attorney general's standing argument fails to persuade.

{¶ 30} The attorney general places a great deal of stock in *In re Suwinski*, a bankruptcy case, as support for applying the doctrine of parens patriae standing in this case. 509 B.R. 568 (Bankr.S.D. Ohio 2013). In *Suwinski*, the attorney general filed a complaint to declare that the debtor's obligation to provide consumer restitution under the Ohio Consumer Sales Practices Act ("CSPA") was nondischargeable in bankruptcy. *Id.* at 570-571. When the debtor filed his bankruptcy petition, the attorney general's own lawsuit was pending in state court against the debtor and other defendants, alleging numerous violations of the CSPA. *Id.* at 571-572.

{¶ 31} The debtor moved to dismiss the attorney general's complaint in the bankruptcy proceeding, alleging that the attorney general lacked standing to

challenge the dischargeability of his debts. *Id.* The attorney general argued that he had standing under Ohio law based on four theories: (1) parens patriae standing, (2) the statutory enforcement scheme of the CSPA, (3) public policy, and (4) the definition of "claim" under the United States Bankruptcy Code. *Id.* at 572.

{¶ 32} Addressing only the first theory, the bankruptcy court denied the debtor's motion to dismiss, ruling that the attorney general had parens patriae standing under *Alfred L. Snapp. Suwinski* at 576. The bankruptcy court determined that the attorney general had a quasi-sovereign interest "in protecting the economic well-being of its citizens from consumer fraud." *Id.* at 573. Notably, the bankruptcy court pointed to the powers granted to the attorney general in the CSPA to show that a dischargeability proceeding is "precisely the type of case" that the General Assembly expected the attorney general to pursue on behalf of the public. *Id.* at 574, citing R.C. 1345.07, which authorizes the attorney general to bring actions against violators of the CSPA.

{¶ 33} The attorney general's reliance on *Suwinski* is not persuasive. For starters, the attorney general does not explain how a writ of mandamus ordering interim transportation for private- and charter-school pupils in one school district has statewide impact. Further blunting the attorney general's argument that this case concerns the well-being of a substantial segment of the State is the relatively small number of pupils in the school district who appear to be affected by the school board's failure to provide interim transportation. Though the attorney general emphasizes that 2,646 pupils were affected by the school board's impracticality determinations, this is not the relevant number to consider for purposes of a parens patriae standing analysis. According to the attorney general's merit brief, only 63 pupils whose families requested mediation are not receiving interim transportation. The attorney general has not shown that a case affecting a small number of pupils within one school district of the State concerns the well-being of "a substantial segment" of the State's population. And although *Suwinski* involved a similar

number of affected citizens (i.e., 92 consumers who had complained to the attorney general), the debtor against whom the attorney general filed a complaint appeared to be operating throughout Ohio. *Suwinski*, 509 B.R. at 571, 574. Moreover, a key difference distinguishes *Suwniski* from this case: the attorney general has broad enforcement powers under the CSPA, thereby lending legislative support for the quasi-sovereign interest argued there. The attorney general does not cite a statute or legislative scheme that would support finding a quasi-sovereign interest in this case.

{¶ 34} For these reasons, we dismiss this case for lack of standing. The attorney general has not established how the parens patriae standing doctrine applies in this case. To the contrary, the attorney general appears to be seeking mandamus to redress injury to particular people, which is not a proper use of parens patriae standing.

### III. CONCLUSION

{¶ 35} For the foregoing reasons, we grant the attorney general's motion for leave to file rebuttal evidence, deny the school board's motion to file a rebuttal affidavit, and overrule the school board's evidentiary objections. We dismiss this action for lack of standing.

Cause dismissed.

_____

**DETERS, J., joined by FISCHER and DEWINE, JJ., concurring.**

{¶ 36} I fully join the majority opinion. I write separately to explain why I believe the opinion concurring in part and dissenting in part's expansive theory of standing for Attorney General Dave Yost—a theory not even championed by the attorney general himself—is misguided.

{¶ 37} The opinion concurring in part and dissenting in part seemingly agrees that the attorney general cannot show that he would """"be directly benefitted or injured by a judgment in the case,"""" opinion concurring in part and

dissenting in part, ¶ 47, quoting *State ex rel. Martens v. Findlay Mun. Court*, 2024-Ohio-5667, ¶ 12, quoting *State ex rel. Hills & Dales v. Plain Local School Dist. Bd. of Edn.*, 2019-Ohio-5160, ¶ 9, quoting *State ex rel. Sinay v. Sodders*, 1997-Ohio-344, ¶ 9. And the opinion concurring in part and dissenting in part does not adopt the attorney general's position that he has standing under the parens patriae doctrine. No surprise there—as the majority opinion explains, that doctrine does not apply to this case. Majority opinion, ¶ 25-34. Instead, the opinion concurring in part and dissenting in part concludes that the attorney general has nearly limitless standing under the common law. In coming to this conclusion, the opinion concurring in part and dissenting in part eschews concerns about party presentation and leans into a recent speech by Judge Patrick J. Bumatay of the United States Court of Appeals for the Ninth Circuit, in which he discussed when judges' straying from the party-presentation principle may be appropriate. Elided from the opinion's discussion is Judge Bumatay's caution that judges "'can't completely refashion the parties' claims, issues, or legal theories.'" Blackman, The Volokh Conspiracy, *Judge Bumatay on Originalism, Stare Decisis, and the Party Presentation Rule* (Nov. 6, 2025), https://reason.com/volokh/2025/11/06/judge-bumatay-on-originalism-stare-decisis-and-the-party-presentation-rule/ (accessed May 8, 2026) [https://perma.cc/4FUT-5ZCX], quoting Hon. Patrick J. Bumatay, YouTube, *Opening Address, The Federalist Society 2025 National Lawyers Convention* (Nov. 6, 2025), https://www.youtube.com/watch?v=poT1A5Z_Lm8 (accessed May 8, 2026). That is precisely what the opinion concurring in part and dissenting in part would do here: it would hold that the attorney general has powers that he has not asked for and has not claimed he possesses.

{¶ 38} In support of its newly crafted argument, the opinion points to "[m]ore than a century of caselaw." Opinion concurring in part and dissenting in part at ¶ 44. While the opinion concurring in part and dissenting in part cites two relatively modern cases—*State ex rel. Cordray v. Marshall*, 2009-Ohio-4986, and

*State ex rel. Merrill v. Ohio Dept. of Natural Resources*, 2011-Ohio-4612—those cases largely relied on two older cases—*State ex rel. Little v. Dayton & South-Eastern RR. Co.*, 36 Ohio St. 434 (1881), and *State ex rel. Crabbe v. Plumb*, 116 Ohio St. 428 (1927). As I will briefly discuss, reliance on *Little* and *Crabbe* is misplaced.

{¶ 39} The first case—*Little*—involved a public nuisance: "Under the system of equity pleading, prior to the adoption of the code, the proper remedy, in cases of nuisances purely public, was by information or bill in the name of the attorney-general, or of the government, instituted by him." *Little* at 439. The court in *Little* did not broadly bestow standing on the attorney general "to institute suits in law and equity on behalf of the public," opinion concurring in part and dissenting in part at ¶ 49. Instead, until this court expanded its reach in *Cordray*, *see Cordray* at ¶ 19-20, the holding in *Little* regarding standing was understood to be limited to public-nuisance cases. *See State ex rel. Sheets v. Hobart*, 11 Ohio Dec. 166, 210 (C.P. 1901) ("That the state through its attorney general can maintain an action in equity to enjoin a public nuisance is well settled."); *State ex rel. Brown v. Newport Concrete Co.*, 44 Ohio App.2d 121, 128-129 (1st Dist. 1975) ("It is quite natural, pursuant to the general constitutional and statutory powers of the Attorney General of the state, that his office is the one which should exercise the rights of the state of Ohio as they relate to the natural resources of the state, and the rights of the citizens of this state to the continued free use of such resources as are held in trust by our state.").

{¶ 40} To be sure, the second case—*Crabbe*—did not limit the attorney general's standing to sue to public-nuisance cases. Its view was more expansive: "We are of the opinion that the Attorney General, being the chief law officer of the state and all the departments thereof, has authority to institute an action in mandamus against a public officer to require him to discharge a duty placed upon

him by a mandatory statute." *Crabbe* at 429. But the opinion contained no support or explanation for this conclusion.

{¶ 41} To me, *Little* and *Crabbe* are, at best, a wobbly foundation for the opinion concurring in part and dissenting in part's broad construction of the attorney general's standing—a construction, it bears repeating, that even the attorney general himself did not propose.[5] To adopt the view that the attorney general has common-law standing in this case would mean that he would have standing to sue any time a law wasn't followed. I am not convinced that the caselaw cited by the opinion concurring in part and dissenting in part supports such a role for the attorney general.

{¶ 42} Therefore, I fully concur in the court's judgment dismissing the attorney general's complaint for lack of standing.

———————————

**KENNEDY, C.J., joined by HAWKINS, J., concurring in part and dissenting in part.**

{¶ 43} I concur in the court's judgment to the extent that it grants relator Attorney General Dave Yost's motion for leave to file rebuttal evidence, denies respondent Columbus City Schools Board of Education's motion to file a rebuttal affidavit, and overrules the school board's evidentiary objections.

{¶ 44} However, the majority incorrectly concludes that the attorney general lacks standing to bring this mandamus action, in which he seeks to compel

---

5. The opinion concurring in part and dissenting in part attempts to bolster its argument that the attorney general has common-law standing by looking to other states. These cases are largely inapposite. For instance, in *Commonwealth ex rel. Beshear v. Commonwealth Office of the Governor ex rel. Bevin*, the court noted that KRS 15.020 specifically provides that the Attorney General "'shall exercise all common law duties and authority pertaining to the office of the Attorney General under the common law. . . .'" 498 S.W.3d 355, 361 (Ky. 2016), quoting KRS 15.020. Such language is missing from R.C. 109.02, which prescribes the duties of Ohio's attorney general. *State ex rel. Douglas v. Thone*, 204 Neb. 836 (1979), doesn't mention the words "common law" or "standing." And the action in *Lund ex rel. Wilbur v. Pratt*, 308 A.2d 554, 558 (1973), was akin to a complaint for a writ of quo warranto, a proceeding for which Ohio law explicitly gives the attorney general standing to pursue. *See* R.C. 109.10.

the school board to comply with its obligations under R.C. 3327.01 and 3327.02 to provide school transportation for students attending private or charter schools. More than a century of caselaw establishes that the attorney general has common-law standing to sue the school board to compel it to adhere to the law.

{¶ 45} Because the attorney general has standing, I would address the merits of this action and would grant a writ of mandamus directing the school board to comply with its unambiguous statutory duty to provide interim school transportation to students attending private and charter schools during the pendency of their challenges to the school board's decisions to deny them school transportation.

{¶ 46} For these reasons, I concur in part and dissent in part from the court's judgment today.

### Standing to Sue

{¶ 47} As this court explained in *Fed. Home Loan Mtg. Corp. v. Schwartzwald*, "'[s]tanding to sue is part of the common understanding of what it takes to make a justiciable case.'" (Bracketed text in original.) 2012-Ohio-5017, ¶ 21, quoting *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 102 (1998). "To have standing, a plaintiff must show an actual injury fairly traceable to the defendant's conduct and that it is likely that a court can redress the injury." *State ex rel. Martens v. Findlay Mun. Court*, 2024-Ohio-5667, ¶ 12. "In mandamus, that means that the relator must show that he '"would be directly benefitted or injured by a judgment in the case."'" *Id.*, quoting *State ex rel. Hills & Dales v. Plain Local School Dist. Bd. of Edn.*, 2019-Ohio-5160, ¶ 9, quoting *State ex rel. Sinay v. Sodders*, 1997-Ohio-344, ¶ 9.

{¶ 48} However, in Ohio, the attorney general is a constitutional officer, Ohio Const., art. III, § 1, and by statute is the chief law officer for the State, R.C. 109.02. R.C. 109.02 establishes the general rule that only the attorney general represents state officers and departments and adds, "The attorney general shall

appear for the state in the trial and argument of all civil and criminal causes in the supreme court in which the state is directly or indirectly interested." In addition, the attorney general has common-law powers not abrogated by the Ohio Constitution or by statute. *See State ex rel. Cordray v. Marshall*, 2009-Ohio-4986, ¶ 18, 23.

{¶ 49} In 1881, we acknowledged that the attorney general has common-law authority to institute suits in law and equity on behalf of the public. *See State ex rel. Little v. Dayton & South-Eastern RR. Co.*, 36 Ohio St. 434, 440 (1881); *Cordray* at ¶ 19. The court in *Little* also explained that the attorney general could bring such a suit "without a relator." *Little* at 440. In 1927, we stated, "[T]he Attorney General, being the chief law officer of the state and all the departments thereof, has authority to institute an action in mandamus against a public officer to require him to discharge a duty placed upon him by a mandatory statute . . . ." *State ex rel. Crabbe v. Plumb*, 116 Ohio St. 428, 429 (1927).

{¶ 50} In *Cordray*, we relied on *Little* and *Crabbe* in holding that the attorney general has common-law standing to bring a prohibition action to compel a common-pleas-court judge to reinstate a murder conviction that the judge patently and unambiguously lacked jurisdiction to vacate. *Cordray* at ¶ 42. And we have rejected the argument that "the attorney general lacked standing to appeal because pursuant to R.C. 109.02, absent direction from the governor, the attorney general had no independent authority to act on behalf of the state." *State ex rel. Merrill v. Ohio Dept. of Natural Resources*, 2011-Ohio-4612, ¶ 32. We held that "nothing in R.C. Chapter 109 appears to abrogate the attorney general's common-law power to appeal on behalf of the state from an adverse judgment." *Id.* at ¶ 36. Consequently, the attorney general had the power to appeal a decision even when the governor, the party below, had chosen not to appeal. *Id.* at ¶ 31, 36.

{¶ 51} Given this precedent, the attorney general has standing to bring this mandamus action on behalf of the State to compel the school board to comply with a mandatory statutory duty.

{¶ 52} The concurrence asserts that the precedent set in *Little* and its progeny provides a "wobbly foundation" for my conclusion that the attorney general has common-law standing to bring this mandamus action. Concurring opinion, ¶ 41. However, Ohio is not alone in recognizing common-law standing for the attorney general to bring actions on behalf of the people of a state.

{¶ 53} "It is widely recognized that the Attorney General's common-law authority to represent the interests of the people derives from the broad powers that office initially possessed in representing the legal interests of the English crown." *Commonwealth ex rel. Beshear v. Commonwealth Office of the Governor ex rel. Bevin*, 498 S.W.3d 355, 362 (Ky. 2016); *see also State ex rel. Cartwright v. Georgia-Pacific Corp.*, 1982 OK 148, ¶ 10. Once the American colonies severed ties with the crown, the power of government was vested in the people of the United States. *Beshear* at 362; *see also* Ohio Const., art. I, § 2 ("All political power is inherent in the people."). The powers of the attorney general of England to litigate the crown's legal interests therefore devolved on state attorneys general to represent the legal interests of the people of each state, which included the power of the attorney general to bring any action necessary to protect the public interest. *Beshear* at 362.

{¶ 54} "Based on that widely accepted understanding of the nature of the Attorney General's inherited prerogatives, it is clear that the Attorney General has a judicially cognizable interest . . . in fulfilling his common-law obligation to protect public rights and interests by ensuring that our government acts legally and constitutionally." *Id.* at 363.

{¶ 55} As the Supreme Court of Kentucky recognized in *Beshear*, "[t]his view of the authority of the Attorney General is in line with that taken by most of

20

our sister jurisdictions" and "courts in numerous other states have reached similar conclusions about the powers and duties of the Attorney General." *Id.* at 365, citing *State ex rel. Douglas v. Thone*, 204 Neb. 836 (1979), *People ex rel. Scott v. Illinois Racing Bd.*, 54 Ill.2d 569 (1973), *Lund ex rel. Wilbur v. Pratt*, 308 A.2d 554 (Me. 1973), *State ex rel. Meyer v. Peters*, 188 Neb. 817 (1972), *Hansen v. Barlow*, 23 Utah 2d 47 (1969), *Jacobson v. Parks & Recreation Comm. of Boston*, 345 Mass. 641 (1963), *Atty. Gen. v. Trustees of Boston Elevated RR. Co.*, 319 Mass. 642 (1946), *State ex rel. Landis v. S.H. Kress & Co.*, 115 Fla. 189 (1934), *superseded by statute in State ex rel. Watson v. Dade Cty. Roofing Co.*, 156 Fla. 260 (1945), and *Yett v. Cook*, 115 Tex. 205 (1926); *see also Ex parte Young*, 209 U.S. 123, 161 (1908) (noting that the attorney general of Minnesota's common-law and statutory authority to enforce statutes made the attorney general a proper party in the case); *State v. Lead Industries, Assn., Inc.*, 951 A.2d 428, 471 (R.I. 2008) ("the attorney general is vested with all the powers that that office possessed at common law"); *State ex rel. Condon v. Hodges*, 349 S.C. 232 (2002) ("the Attorney General can bring an action against the Governor when it is necessary for the enforcement of the laws of the State, the preservation of order, and the protection of public rights"); *Botelho ex rel. Members of Alaskan Sports Bingo Joint Venture v. Griffin*, 25 P.3d 689, 692 (Alaska 2001) ("Under the common law, the attorney general has the power to bring any action which he thinks necessary to protect the public interest, a broad grant of authority which includes the power to act to enforce Alaska's statutes."); *District of Columbia v. ExxonMobil Oil Corp.*, 172 A.3d 412, 431, fn. 28 (D.C. 2017) (recognizing the attorney general's broad grant of common-law authority to enforce statutes).

{¶ 56} There is caselaw holding that the attorney general's common-law powers may be abrogated by the state's constitution or statutes. *See, e.g.*, *State ex rel. Morrisey v. West Virginia Office of Disciplinary Counsel*, 234 W.Va. 238, 255 (2014) (the attorney general has common-law standing to prosecute offenders

unless the constitution or a statute law abolishes it); *Cartwright*, 1982 OK 148, at ¶ 10, 18, 34 (recognizing that a statute could limit or abrogate the attorney general's common-law standing).

{¶ 57} Some states have held that the attorney general has no common-law powers. *See, e.g.*, *Seattle v. McKenna*, 172 Wash.2d 551, ¶ 12 (2011) ("the Washington Constitution does not vest the attorney general with any common law powers"); *Commonwealth v. Mulholland*, 549 Pa. 634, 655 (1997), quoting *Commonwealth v. Carsia*, 512 Pa. 509, 513 (1986) ("the powers of the attorney general are strictly limited and are solely a 'matter of legislative designation and enumeration'"). But in Ohio, our precedent recognizes the attorney general's common-law standing to bring actions to enforce state law, and neither our Constitution nor any statute has abrogated that authority, *see Cordray*, 2009-Ohio-4986, at ¶ 18, 23. The concurrence is simply incorrect when it claims that my analysis is built on a "wobbly foundation."

### The Party-Presentation Principle

{¶ 58} The concurring opinion also points out twice that the attorney general in this case never argued that he had common-law standing to pursue this mandamus action. This implicates the party-presentation principle.

{¶ 59} Our adversarial system of adjudication depends on the party-presentation principle—the idea that "'we rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present.'" *Snyder v. Old World Classics, L.L.C.*, 2025-Ohio-1875, ¶ 4, quoting *Greenlaw v. United States*, 554 U.S. 237, 243 (2008). The basic premise is that "'[parties represented by competent counsel] know what is best for them, and are responsible for advancing the facts and argument entitling them to relief.'" (Bracketed text in original.) *United States v. Sineneng-Smith*, 590 U.S. 371, 375-376 (2020), quoting *Castro v. United States*, 540 U.S. 375, 386 (2003) (Scalia, J., concurring in part and concurring in the judgment). For this reason, "[o]ur

longstanding policy is not to address an unbriefed issue," *State ex rel. Parisi v. Dayton Bar Assn. Certified Grievance Commt.*, 2019-Ohio-5157, ¶ 34 (Kennedy, J., concurring in part and concurring in judgment only in part) (collecting cases). Nonetheless, the party-presentation principle is not absolute, and this court has observed that there are exceptions to it. *State ex rel. GateHouse Media Ohio Holdings II, Inc. v. Columbus Police Dept.*, 2025-Ohio-5243, ¶ 41; *see also* Frost, *The Limits of Advocacy*, 59 Duke L.J. 447, 461-467 (2009) (discussing exceptions to the party-presentation principle).

{¶ 60} As important as party presentation is to the adversarial process, there is a more fundamental value at stake: "It is emphatically the province and duty of the judicial department to say what the law is," *Marbury v. Madison*, 5 U.S. 137, 177 (1803). The parties may advance legal theories about what they think the law is, but it is the judiciary that has "the ultimate authority to render definitive interpretations of the law," *TWISM Ents., L.L.C. v. State Bd. of Registration for Professional Engineers & Surveyors*, 2022-Ohio-4677, ¶ 33. Therefore, we must independently determine what the law is regardless of whether a party has advanced a correct argument for what the law means. *See State ex rel. Howard v. Chief Inspector's Office*, 2026-Ohio-1428, ¶ 59 (Kennedy, C.J., concurring in part and dissenting in part).

{¶ 61} Judge Patrick J. Bumatay of the United States Court of Appeals for the Ninth Circuit put it aptly:

> "Judges are never obligated to follow the parties' agreement to incorrect law. After all, the parties don't need to ensure the best interpretation of the law. Judges do. So even though judges generally rely on the arguments the parties advance, we should never cede our duty to independently interpret the law. . . . [So] within a particular theory, judges may consider any arguments,

sources, or authorities that may be helpful—including those not raised in the briefing."

Blackman, The Volokh Conspiracy, *Judge Bumatay on Originalism, Stare Decisis, and the Party Presentation Rule* (Nov. 6, 2025), https://reason.com/volokh /2025/11/06/judge-bumatay-on-originalism-stare-decisis-and-the-party-presentation-rule/ (accessed Apr. 27, 2026) [https://perma.cc/4FUT-5ZCX], quoting Hon. Patrick J. Bumatay, YouTube, *Opening Address, The Federalist Society 2025 National Lawyers Convention* (Nov. 6, 2025), https://www.youtube.com/watch?v=poT1A5Z_Lm8 (accessed Apr. 27, 2026).

{¶ 62} After all, "judges are not like lemmings, following the parties off of the jurisprudential cliff."  Hon. Patrick J. Bumatay, YouTube, *Opening Address, The Federalist Society 2025 National Lawyers Convention* (Nov. 6, 2025), https://www.youtube.com/watch?v=poT1A5Z_Lm8 (accessed Apr. 27, 2026).

{¶ 63} Consequently, "[w]hen an issue or claim is properly before the court, the court is not limited to the particular legal theories advanced by the parties, but rather retains the independent power to identify and apply the proper construction of governing law."  *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 99 (1991).

{¶ 64} And here, the question whether the attorney general has standing to bring this mandamus action is properly before the court, so we have authority to consider any legal reasoning or legal authority to decide that question—even if not raised in the briefing.  The party-presentation principle therefore is not a barrier to determining whether the attorney general has common-law standing in this case, even if the attorney general did not correctly identify the source of his standing himself.

### Mandamus

{¶ 65} R.C. 3327.01 requires public-school districts to provide transportation to and from school for students below the ninth grade who live more

than two miles from their school, and this duty generally extends to private and charter-school students. However, "[w]here it is impractical to transport a pupil by school conveyance, a board of education may offer payment, in lieu of providing such transportation in accordance with section 3327.02 of the Revised Code." R.C. 3327.01. After passing a resolution of impracticality in accordance with the statute, the school district "shall offer to provide payment in lieu of transportation." R.C. 3327.02(C).

{¶ 66} The student's parent or guardian may accept the offer of compensation or reject the offer and demand mediation with the Department of Education and Workforce ("DEW"). R.C. 3327.02(C)(1)(b). If mediation does not resolve the dispute, the department must conduct an administrative hearing under R.C. Ch. 119, after which the department may approve the payment in lieu of transportation or order the school district to provide transportation. R.C. 3327.02(E)(1)(a) and (b).

{¶ 67} Meanwhile, "[t]he school district . . . shall provide transportation for the pupil from the time the parent, guardian, or other person in charge of the pupil requests mediation until the matter is resolved" in mediation or the subsequent administrative-review process. R.C. 3327.02(E)(2). That bears repeating—once mediation is requested, the school board must transport the student to and from school.

{¶ 68} A school district's failure to provide transportation has many negative consequences. If a school district "has failed or is failing to provide transportation" pending the outcome of mediation or the administrative hearing contrary to the requirements of R.C. 3327.02(E)(2), "the department shall order the school district . . . to pay to the pupil's parent, guardian, or other person in charge of the pupil, an amount equal to fifty per cent of the cost of providing transportation as determined by the board or governing authority," not to exceed $2,500. R.C. 3327.02(F)(1). If a school district fails to comply with an order to pay that amount,

the department "shall deduct the amount that the board is required to pay under that order from any pupil transportation payments the department makes to the school district board." R.C. 3327.02(F)(2).

{¶ 69} In this case, the attorney general seeks a writ of mandamus to compel the school board to provide interim transportation for charter- and private-school students during the pendency of the mediation and subsequent administrative-review process. To obtain a writ of mandamus, the attorney general must establish by clear and convincing evidence (1) a clear legal right to the relief sought, (2) a clear legal duty on the part of the school board to provide the relief, and (3) the lack of an adequate remedy in the ordinary course of the law. *State ex rel. Waters v. Spaeth*, 2012-Ohio-69, ¶ 6.

{¶ 70} R.C. 3327.02(E)(2) creates a clear legal duty for a school district to provide interim transportation for a pupil pending mediation and administrative review, notwithstanding the passage of an impracticality resolution. The statute states, "The school district . . . shall provide transportation for the pupil from the time the parent, guardian, or other person in charge of the pupil requests mediation until the matter is resolved" either through mediation or the postmediation administrative-hearing process. *Id*. The "use of the term 'shall' in a statute or rule connotes a mandatory obligation unless other language evidences a clear and unequivocal intent to the contrary." *State ex rel. Cincinnati Enquirer v. Lyons*, 2014-Ohio-2354, ¶ 28. Here, R.C. 3327.02(E)(2) plainly obligates the school board to provide interim transportation to students until the statutory mediation process has concluded, and the statute provides a clear legal right of the affected students to receive that transportation.

{¶ 71} Again, "the Attorney General, being the chief law officer of the state and all the departments thereof, has authority to institute an action in mandamus against a public officer to require him to discharge a duty placed upon him by a mandatory statute." *Crabbe,* 116 Ohio St. at 429. And the attorney general may

bring a suit in equity or law on behalf of the public and "without a relator," *Little*, 36 Ohio St. at 440, i.e., without an aggrieved student joining the action. Therefore, the attorney general has a clear legal right to compel the school board to comply with its mandatory duties.

{¶ 72} That leaves whether the attorney general has an adequate remedy in the ordinary course of the law. To be an adequate remedy that forecloses mandamus, the remedy "must be complete, beneficial, and speedy." *State ex rel. N. Main St. Coalition v. Webb*, 2005-Ohio-5009, ¶ 41.

{¶ 73} The administrative process provided by R.C. 3327.02(E)(1) does not afford the relief that the attorney general seeks—an order compelling the school board to provide transportation while mediation or the administrative-review process plays out. The mediation or administrative review provided by that statute may ultimately result in the department's directing the school board to provide transportation or pay compensation in lieu of transportation. But by the time the department orders the school board to act, the right to interim transportation has been irrevocably lost. The order entered after the mediation and administrative processes are complete is not an adequate remedy that precludes this court from ordering the school board to provide transportation during the pendency of the process.

{¶ 74} R.C. 3327.02(F)(1) affords compensation to students when the school board fails to provide interim transportation during mediation and the administrative-review process contrary to the requirements of R.C. 3327.02(E)(2). R.C. 3327.02(F)(1) provides that if DEW finds that a school board is failing to provide transportation during the pendency of mediation or administrative review, the department shall order the school board to pay to the student's family "an amount equal to fifty per cent of the cost of providing transportation . . . and not more than two thousand five hundred dollars."

{¶ 75} However, the monetary remedy is not a complete one. Again, students have a statutory right to transportation during mediation and administrative review, and compensation does not eliminate the right to transportation. That right to transportation is irrevocably lost when the school board fails to comply with its statutory duty to provide transportation. And that is the right the attorney general seeks to vindicate.

{¶ 76} Further, the payments required by R.C. 3327.02(F)(1) do not fully compensate students' families for the costs they incur in providing their own transportation to school. Notably, R.C. 3327.02(F)(1) provides for the school board to pay only half the costs of transportation *it* incurs per student—up to a maximum of $2,500. However, according to Columbus City Schools and DEW, for the 2024–2025 school year, "50 percent of the average cost of pupil transportation" was $583.86. By comparison, a two-hour bus pass in Columbus costs $1.00 for children under 13. But other costs to families go uncompensated when transportation is denied. Those might include a parent's losing wages for missed work or choosing a more flexible job with lower pay so that the parent can transport the child to school. It might include the cost of moving closer to a school or undergoing the stress of patching together a network of friends and relatives to help get a child to school. It might even demand a choice to remain in an underperforming public school rather than allowing the child to enroll in a private or charter school. Those costs cannot be remedied by the meager compensation in lieu of transportation provided in R.C. 3327.02(F)(1). Therefore, compensation in lieu of transportation is not a *complete* remedy that precludes us from issuing the writ of mandamus requested by the attorney general. *See N. Main St. Coalition,* 2005-Ohio-5009, at ¶ 41.

{¶ 77} For these reasons, I would grant a writ of mandamus compelling the school board to provide transportation to private- and charter-school pupils while

they are engaged in mediation or administrative review.  Because the majority does otherwise, I concur in part and dissent in part from its judgment today.

––––––––––––––––––––

Dave Yost, Attorney General, and Erik J. Clark, Jennifer L. Pratt, and Steven A. Oldham, Assistant Attorneys General, for relator.

Amundsen Davis, L.L.C., and John C. Albert; and Columbus City Schools, James A. Barnes, and Adam C. Sims, for respondent.

––––––––––––––––––––